Alva Will BAKER, Appellant,

v.

Joyce Aline BAKER, Appellee.

No. B2749.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 19, 1981.

Maurice Bresenhan, Houston, for appellant.

John Lohmann, III, Lohmann, Glazer & Irwin, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and SAM ROBERTSON, JJ.

SAM ROBERTSON, Justice.

This appeal arises from a divorce terminating the twenty-one year marriage of the parties and dividing their estate. Appellant complains primarily of the property division and of the sufficiency of evidence to support submission of certain special issues to the jury. We affirm.

Appellant first contends that the trial court's division of the parties' property was not just and fair. We begin our consideration by noting the trial judge's wide discretion in making a division which he deems "just and right" under Tex.Fam. Code Ann. § 3.63 (Vernon 1975). Such exer-

cise of discretion will not be disturbed on appeal unless a clear abuse is shown. *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923); *Bell v. Bell*, 513 S.W.2d 20 (Tex. 1974). An equal division is not required, but any inequality must be based on all the surrounding circumstances and must not be so disproportionate as to be inequitable. *Thomas v. Thomas*, 525 S.W.2d 200 (Tex. Civ.App.—Houston [1st Dist.] 1975, no writ); *Zamora v. Zamora*, 611 S.W.2d 660 (Tex.Civ.App.—Corpus Christi 1980, no writ).

In *Young v. Young*, 609 S.W.2d 758 (Tex. 1980) and *Murff v. Murff*, 615 S.W.2d 696 (Tex.1981), the Supreme Court enumerates factors which a trial court may consider in arriving at an equitable division and points out that the "circumstances of each marriage dictate what factors should be considered . . . ." We note, first, that the *Young* court expressly stated their ruling was in regards to a fault based divorce. The *Murff* court explained that although the decree itself did not specify the ground on which the divorce was granted, petitioner had both pleaded and proved insupportability, adultery, and cruel treatment. The court, looking to *Young*, said because the action was based on fault *and* no fault, the court could properly consider fault in making a property division. *Murff, supra.*

In the case before us, appellee's petition alleges insupportability, cruelty, and fraud on the community. In response to special issues, the jury found both parties guilty of cruel treatment and found appellant had terminated his business affairs "to diminish the value of the parties' community property." The judgment itself follows the language of Tex.Fam.Code § 3.01 (Vernon 1975) in decreeing the parties' marriage ended on grounds of insupportability.

In *Clay v. Clay*, 550 S.W.2d 730 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ), the court points out that § 3.01 authorizes a judge to grant a divorce "without regard to fault." This phrasing represents the statute more accurately than the popular phrase "no fault" because the latter sug-

gests no fault existed, while the former simply does not consider whatever fault there might have been.

■ We have reviewed the record herein and find that the trial judge had before him jury findings of cruelty by both parties and could have granted the divorce on that ground. He did not. Nevertheless, even though the judgment recites insupportability as the basis of the divorce, the trial judge was authorized to consider the findings on cruelty and diminution of the value of community property in dividing the estate of the parties. *Clay, supra.* In addition, the court could consider "disparity of earning powers, business opportunities, capacities and abilities, employment prospects, health of the parties, welfare of the children, and the parties separate property." 550 S.W.2d at 734; *Murff, supra; Young, supra.*

In view of the above, it seems clear that the trial court properly exercised his authority unless there was some error in submission of these special issues to the jury. Appellant does not complain of the issues as to cruelty. He does, however, contend that the issues regarding diminution of the value of the business are not supported by the evidence and that the jury's answers are against the great weight and preponderance of the evidence. Thus, we will consider these points of error before deciding the first question.

The record before us reveals that appellant owned and operated a successful marble making business worth in excess of $130,000.00. Shortly before the parties' separation, appellant sold 20% of the corporation to his sister and brother-in-law for $3,000.00. Subsequently, appellant closed his business completely, claiming a back injury prevented him from continuing to work in a business which required lifting heavy objects. The business remained closed some two and a half years to the date of the divorce.

Appellant testified that his back injury was a result of appellee's unsuccessful attempt to hit him with a car. Appellee testified that appellant had back trouble for years and that he told her he would shut down his business if she refused to settle the divorce on his terms.

■ Since the issue of appellant's defrauding the community estate was raised by the pleadings and by the evidence, it was not error to submit these special issues to the jury. Furthermore, a review of the testimony convinces us that there is sufficient evidence to support the jury's answers on these issues. Appellant's points of error five through thirteen are overruled and, thus, we also, overrule the first point of error regarding division of the property.

In points of error fourteen through sixteen, appellant presents an argument that the court erred in submitting the issues regarding diminution of the value of the business because of the doctrine of interspousal immunity. We find no merit to this argument and overrule these points of error. As appellee notes, nothing in the record before us indicates that such doctrine was considered in any way.

■ In points of error two through four, appellant complains of special issues regarding the current market value of an unaccounted for six and a half carat diamond. We find no error in the submission of these issues to the jury, since the questions were raised by the pleadings and by the evidence. Appellant testified that he purchased the ring in question as an investment for $11,000 and had had it appraised by a friend at $31,500. The latter figure he now wishes us to disregard as hearsay. Appellee testified that the ring was worth $30,000 and she had owned it about four years. Neither party is qualified as an expert appraiser. Appellant's inventory and appraisal lists the value as $11,000, the initial cost. The jury assessed its current value at $22,000. In his findings of fact and conclusions of law, the court valued a man's gold watch, man's emerald ring, and the six carat diamond at $23,500.

■ Since appellee's valuation of the diamond is uncontroverted, assuming we exclude appellant's appraisal as hearsay, the

only questions before us are whether an owner can give value testimony as regards personal property and, if so, what qualifications he must have to do so. Clearly, an owner can offer value testimony. *Barstow v. Jackson*, 429 S.W.2d 536 (Tex.Civ.App.—San Antonio 1968, no writ). However, in *Bavarian Autohaus, Inc. v. Holland*, 570 S.W.2d 110 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), the court pointed out the qualifications such a witness must have.

In Texas the qualifications of a witness to give value testimony are knowledge of the general value-standard of things in that particular class and knowledge of the particular thing to be valued. The witness must have a knowledge of the market value (if there is one) in the vicinity, and it must be based in some degree on personal observation. Probably the most satisfactory rule is that anyone familiar with the values in question may testify. 2 McCormick & Ray, Texas Law of Evidence 257, Opinion Evidence § 1422 (1956).

When the owner of goods seeks to testify to their value, as distinguished from their value to him, the Texas rule is that he must show that he is qualified to do so; he is prima facie qualified to state it if he declares he knows the market value. 37 A.L.R.2d 998, citing many cases. Neither appellant nor appellee meet these standards. Nevertheless, even though the jury's answer to this issue on the value of the diamond does not appear to be supported by the evidence, the erroneous assessment of value of one piece of property is not, alone, enough to convince us that the property division as a whole is manifestly unjust.

In points of error seventeen through nineteen, appellant complains of special issues regarding the fair market value of the Marble Company. Again, we find no error in these submissions. The issue was raised by the pleadings and the answers were supported by sufficient evidence. Henry Cruse, a Certified Public Accountant, testified that as of December, 1978, the company was worth between $175,000 and $200,-000 and that one year after it closed, it had a book value of $87,000. Using his computation, that is, multiplying this figure times two and a half, we think the jury could have assessed the value of the company in March of 1980 at over $200,000. In comparison, Bernard Swinn, owner of a marble manufacturing company, who had previously purchased equipment through bankruptcies, testified he would pay between $5,000 and $10,000 for the equipment of the company. Guinn Rasbury, appellant's bookkeeper and brother-in-law, testified that the net worth of the company in 1980 was approximately $87,000.

As the court notes in *McConnico v. Texas Power & Light Company*, 335 S.W.2d 397 (Tex.Civ.App.—Beaumont 1960, writ ref'd n. r. e.), "A jury is at liberty to reach its conclusion by blending all of the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry." As we view it, the above evidence is ample support for the jury's findings that the present market value of the marble company is $100,000. Therefore, we overrule points of error seventeen through nineteen.

In his twentieth point of error, appellant complains of the court's order that he pay appellee's attorneys' fees in the amount of $14,500.00. The trial judge may, within his discretion, award attorney's fees to one party or the other in making an equitable division of the property. *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002 (1950). We find no abuse of this discretion and overrule the twentieth point of error.

In his twenty third point of error, appellant complains of that portion of the judgment which grants the right to inherit from and through the minor child. Appellant contends that such grant is exclusive and is, in effect, a partial termination of the parent-child relationship. We do not agree with appellant's argument that the judgment grants this right exclusively to appellee. The judgment names appellee managing conservator and gives her certain "rights, privileges, duties and powers of a

parent, including, without limitation ... the right to inherit from and through the child." Appellant is named possessory conservator and is given certain "rights, privileges, duties and powers during any period of possession of the child...." The right to inherit is not specifically mentioned because such a grant would be nonsensical since the list which follows is limited by the phrase "during any period of possession." In addition, the questions of inheritance and of termination of the parent-child relationship are both governed by statute in Texas. *See* Tex.Prob.Code Ann. § 37 *et seq.* (Vernon 1980); Tex.Fam.Code Ann. § 15.01 *et seq.* (Vernon 1975). Nevertheless, to clarify the situation for both parties and to avoid future entanglements, we modify the judgment to eliminate the phrase complained of by appellant.

We have considered appellant's remaining points of error and overrule them.

As modified, the judgment is affirmed.